UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARC PEARSON, | ) | CASE NO. 5:14CV634 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| FIRSTENERGY CORP. PENSION PLAN, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Plaintiff Marc Pearson ("plaintiff" or "Pearson") brought this action under the Employee Retirement Income Security Act ("ERISA") against defendant FirstEnergy Corp. Pension Plan ("the Plan") and defendant FirstEnergy Corp. Retirement Board, Plan Administrator ("the Plan Fiduciary"), asserting that he was improperly denied pension benefits. In his complaint, plaintiff raises three claims: (1) a denial of benefits claim, under 29 U.S.C. § 1132; (2) a breach of fiduciary duty claim, also under 29 U.S.C. § 1132; and (3) a refusal to provide information and documents claim, under 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1)(B). Defendants move for dismissal of the breach of fiduciary duty claim and the refusal to provide documents claim (Doc. No. 9 ["MTD"]). Plaintiff opposes the motion (Doc. No. 10 ["Opp."]), and defendants have filed a reply (Doc. No. 11 ["Reply"]).

## I. BACKGROUND

According to the complaint, in mid-1998, Duquesne Light Company ("DLC"), a predecessor in interest to FirstEnergy Nuclear Operating Company ("FENOC"), recruited plaintiff for employment at its Beaver Valley generation plant. (Doc. No. 1 ["Compl."] ¶ 7.) Because a change in employment would require plaintiff to relocate his family and abandon his consulting business, plaintiff negotiated an arrangement whereby he would obtain ten (10) years of pension credit at DLC after five (5) years of employment. It was plaintiff's understanding that he would receive a full pension from DLC upon attaining the age of 60, and that he would also receive a one-year severance package when he left the company. (Compl. ¶ 8.)

In July 1998, plaintiff commenced his employment with DLC, serving as the "Technical Assistant to the President, Generation Group and Chief Nuclear Officer." (*Id*. ¶ 9, internal quotation marks omitted.) "In relation to his DLC employment, Pearson was promised and provided a 'special retirement program' by DLC, which DLC explained to Pearson[]was the vehicle for ensuring Pearson received two (2) years of service credit to be used to calculate his DLC pension." (*Id*. ¶ 10.) The special retirement program required plaintiff to work for DLC for 5 years (until July 2003) in order to receive 10 years of service credit. (*Id*. ¶ 11.)

In 1999, DLC and FirstEnergy Corp. ("FE") agreed to a transfer of certain power generating assets, including the Beaver Valley Power Station where plaintiff was employed. (*Id*. ¶ 14.) As part of the asset transfer, FE, through its subsidiary FENOC, provided written employment agreements to plaintiff and the other DLC employees affected by the transfer. The employment offer extended to plaintiff referenced the 2-for-

1 service credit arrangement offered by DLC. Specifically, the agreement provided that if plaintiff was employed with FENOC until December 31, 2001, plaintiff would be vested with 7 years of service with FENOC. The agreement further provided that if plaintiff's employment with FENOC continued after December 31, 2001, plaintiff would earn service credit at the rate of 2 years for each year served, similar to the original agreement plaintiff had with DLC. (*Id.* ¶¶ 15-17.)

When negotiating with FENOC, plaintiff alleges that he advised FENOC that he had originally negotiated with DLC that he would reach 10 years of service credit upon his 5th anniversary with DLC (July 13, 2003). Plaintiff complained to FENOC representatives that the amount of service credit offered by FENOC would yield less than 10 years as of plaintiff's 5th anniversary. The FENOC representatives agreed with plaintiff that the current arrangement would only yield 9 years and 11 months of service credit as of July 13, 2003. Nonetheless, plaintiff was advised that the Plan contained an annual bonus that, even without the full 10 years of service, would earn plaintiff more than he would have earned under the DLC pension plan with 10 full years of service. (*Id.* ¶¶ 18-20.)

In late 2003, a restructuring at the Beaver Valley plant resulted in the reduction of the number of directors (the title held by plaintiff), and plaintiff entered into negotiations with FENOC regarding his separation package. Plaintiff accepted a separation package from FENOC, and his last day of employment was on or around November 22, 2003. In 2004, plaintiff signed a separation agreement, which provided for one year of separation pay. There is no dispute that plaintiff received his separation pay from FENOC. (*Id.* ¶¶ 21-22.)

Approximately six months after signing the separation agreement (still in 2004), plaintiff received a letter from FE informing plaintiff that he had met the pension plan requirements and would be receiving a full pension at age 60 due, in part, to the fact that plaintiff had achieved 10 years of eligible service credit. (*Id*. ¶ 23.) Beginning the following year (2005), plaintiff contacted the FE pension department on multiple occasions to determine the amount of his monthly pension benefit with FENOC at age 60. Each time he was advised that the pension department was too busy to make the calculation, and that the calculation would not be made until plaintiff was closer to his actual benefit commencement date in 2013. (*Id*. ¶¶ 24-25.)

It was not until January 25, 2013 that plaintiff was advised by letter from a representative of the Plan of the monthly pension amount. According to the letter, the amount was calculated assuming a benefit starting date of March 1, 2013. "Pearson took issue with FE's apparent effort to avoid the service credit enhancement it had promised him in 1999. In effect, FE wanted to apply the service credit enhancement to some pension plan previously unknown to Pearson, and short him his credit under the FE pension plan by not giving him credit for his service with DLC in addition to the credit for his service *with FENOC*." (*Id*. ¶¶ 27-28, emphasis in original.) Plaintiff objected by letter to the calculation of service credit. William Meader, who held himself out as the Plan Administrator, denied plaintiff's request for additional service credit under the Plan. (*Id*. ¶ 30.)

Plaintiff appealed Meader's decision to the Plan Fiduciary. In connection with his appeal, plaintiff sent an email to the Plan Fiduciary (via Meader) requesting "certain documents and information . . . ." (*Id*. ¶ 53.) Meader refused to provide the

4

requested material, which included "a copy of the Plan Fiduciary's prior decisions in the same or similar cases where a pension plan participant has alleged he was missing service credit under the Plan." (*Id*. ¶ 54.) By letter dated September 25, 2013, the Plan Fiduciary issued its final denial decision to plaintiff. On March 23, 2014, plaintiff filed the present lawsuit. (*Id*. ¶ 32.)

In their motion to dismiss, defendants argue that plaintiff has "improperly attempted to re-package his benefits claim as one alleging a breach of fiduciary duty[.]" (MTD at 57.)[1] Under these circumstances, defendants insist that plaintiff's breach of fiduciary claim (count two) must be dismissed. They further assert that plaintiff cannot maintain his refusal to furnish documents claim (count three) because the documents plaintiff requested—copies of prior decisions involving appeals by other participants from service calculations under the Plan—are not among the categories of documents a plan or plan administrator is required to provide under ERISA. (*Id*. at 58.)

## II. STANDARD OF REVIEW

In reviewing a complaint in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although a complaint need not contain "detailed factual allegations[,]" it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Id.* at 555. Thus, a complaint survives a motion to dismiss if it "contain[s]

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quotation marks and citation omitted). And, "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678.)

### III. DISCUSSION

#### A. Breach of Fiduciary Duty Claim

Plaintiff's complaint merely cites 29 U.S.C. § 1132 as the source for his denial of benefits claim (count one) and his breach of fiduciary claim. Section 1132(a)(1)(B) provides for a civil action by a plan participant or beneficiary "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(3) provides for an action by a plan participant, beneficiary, or fiduciary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable relief to redress such violations or to enforce any provisions of this subchapter or the terms of the plan[.]" (internal numerals and letters omitted).

"A fiduciary must discharge his duties with respect to the plan 'solely in the interest of the participants and beneficiaries.'" *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 570 (6th Cir. 2013) (quoting 29 U.S.C. § 1104(a)(1)). "Misleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for

6

breach of fiduciary duty.'" *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (quoting *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)). "A misrepresentation is material 'if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision . . .' [regarding ERISA benefits.]" *Stark v. Mars, Inc.*, 790 F. Supp. 2d 658, 669 (S.D. Ohio 2011) (quoting *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999)).

While conceding the existence of such a claim under ERISA, defendants insist that plaintiff cannot simultaneously maintain a denial of benefits claim under § 1132(a)(1)(B) and a breach of fiduciary claim under ERISA's "catchall provision" in § 1132(a)(3). Indeed, it is true that "[t]he Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996)). Thus, an ERISA claimant cannot "simply characterize a denial of benefits as a breach of fiduciary duty[.]" *Id*. at 616; *see Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 491 (6th Cir. 2009) (relief under § 1132(a)(3) is not appropriate where plaintiff merely "repackage[s]" a § 1132(a)(1)(B) benefits claim) (quoting *Varity*, 516 U.S. at 515). Accordingly the Court must determine whether plaintiff's fiduciary duty claim can coexist with his denial of benefits claim.

In *Stark*, the plan participant alleged that she relied upon the representation by the plan fiduciary as to the expected amount of her monthly benefit in selecting the date she wished to begin receiving pension benefits. After receiving five monthly payments at the represented amount, she was advised that her benefits had been

7

miscalculated, and that she was only entitled to a smaller amount as a monthly payout. The plaintiff brought suit alleging, among other things, that her benefits were improperly calculated under the plan, and that she relied on material misrepresentations concerning her retirement benefits. *Stark*, 790 F. Supp. 2d at 661-63.

The court permitted the plaintiff to proceed simultaneously with both a denial of benefits claim and a fiduciary duty claim, observing that "[w]hether plaintiff is entitled to equitable relief based on the fact that plaintiff elected to begin receiving retirement benefits when she did (prior to reaching age 65) based on the misrepresentations [regarding the amount of the monthly benefit] involves issues completely distinct from whether plaintiff was actually entitled to the greater benefit under the terms of the Plan." *Stark*, 790 F. Supp. 2d at 669; *see Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840 (6th Cir. 2007). Further, the court emphasized that "[t]he allegations in plaintiff's claim for breach of fiduciary duty do not refer to any entitlement to the greater benefit under the terms of the Plan, and are not sufficient to state a claim under § 1132(a)(1)(B). Thus, it is not simply a repackaged benefits claim."[2] *Stark*, 790 F. Supp. 2d at 669.

In arriving at the conclusion that the fiduciary duty claim was viable, the court relied, in part, on *Jones v. Am. Gen. Life and Acc. Ins. Co.*, 370 F.3d 1065, 1071 (11th Cir. 2004). There, the plaintiffs brought a denial of benefits claim and a breach of fiduciary duty claim based on alleged misrepresentations by the plan fiduciary. The court

---

[2] In fact, the court went on to note that, "if plaintiff is correct when she states in her memorandum contra . . . , that she is only entitled to [the recalculated monthly benefit] under the terms of the Plan, and she decides to abandon her § 1132(a)(1)(B) claim completely, then the only other ERISA statute which could conceivably afford her the relief she seeks is § 1132(a)(3), and dismissal of that claim at this stage of the case would be premature." *Id*.

allowed both claims to proceed, noting that the plaintiffs conceded, for purposes of the fiduciary duty claim, that they were not entitled to the benefit they sought under the terms of the plan. *See Jones,* 370 F.3d at 1074.

The court in *Stark* also found that the fact that the plaintiff stated in her complaint that she was seeking to obtain the higher retirement benefit she claimed she was wrongfully denied did not "automatically convert her equitable claim into a claim for Plan benefits under § 1132(a)(1)(B)." *Stark*, 790 F. Supp. 2d at 670 ("The Sixth Circuit has stated that in cases of misrepresentation, the court has 'awarded equitable relief, including denied benefits.'") (quoting *Del Rio v. Toledo Edison Co.*, 130 F. App'x 746 (6th Cir. 2005)); *but see Donati v. Ford Motor Co. Gen. Ret. Plan*, No. 13-14496, 2014 WL 3663966, at *2 (E.D. Mich. July 23, 2014) (rejecting a fiduciary duty claim as a repackaging of a denial of benefits claim based, in part, on the fact that the plaintiff was seeking the same relief in both claims—the wrongfully withheld benefit).

Like the plaintiff in *Stark*, plaintiff has conceded—for the purposes of his fiduciary duty claim—that the material representations he relied upon "were false and contrary to the Plan's terms." (Compl. ¶ 43.) Specifically, plaintiff has alleged that defendants breached their fiduciary duty owed to him as a plan participant when they knowingly and falsely represented that his DLC service credit would be added to his FENOC service credit when calculating his pension benefits. (*Id.* ¶¶ 38, 41, 43.) Thus, the injury set forth in count two flows from the alleged misrepresentation and is separate and distinct from the injury alleged in count one flowing from the alleged denial of benefits under the Plan. (*See* Compl. ¶ 50 ["Based on the [allegations in count two], the

9

Plan and the Plan Fiduciary should be estopped from denying Pearson the additional service credit *that he was promised by FENOC*."], emphasis added.)

Moreover, access to a denial of benefits claim (alone) will not necessarily provide plaintiff with relief. Because his wrongful denial of benefits claim hinges on a determination of what plaintiff was actually entitled to receive under the Plan and the attendant agreements relative to plaintiff's employment, plaintiff will only recover under § 1132(a)(1)(B) if the alleged representations made to him were correct. If, as plaintiff alleges in count two, the representations were false, plaintiff must look to the catchall provision of § 1132(a)(3) for relief.

Of course, the fact that these alternatively pled claims are mutually exclusive is of no consequence at the pleading stage. Under Rule 8, "[a] party may state as many separate claims or defenses as it has, *regardless of consistency*." Fed. R. Civ. P. 8(d)(3) (emphasis added); *see Son v. Coal Equity, Inc.*, 122 F. App'x 797, 802 (6th Cir. 2004) (noting that "the Federal Rules of Civil Procedure permit pleading in the alternative and even the pleading of inconsistent claims") (citing former Fed. R. Civ. P. 8(e)(2)); *Ajuba Intern, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 688 (E.D. Mich. 2012) ("Under Rule 8, a pleading does not become insufficient by reason of a party having made alternative, or even contradictory, claims.") (quotation marks and citations omitted); *Baumgardner v. Bimbo Ford Bakeries Dist. Inc.*, 697 F. Supp. 2d 801, 816 (N.D. Ohio 2010) ("And it is true that Rule 8 explicitly allows a party to plead inconsistent claims.") (citing Fed. R. Civ. P. 8(d)(3)).

As the record develops in discovery, plaintiff may be forced to abandon one of his alternatively pled theories for recovery because no single set of facts will

simultaneously support both claims.[3] However, at this stage of the proceedings, the Court must conclude that plaintiff has successfully pled both types of individual actions permitted under § 1132, and that his denial of benefits claim, alone, cannot necessarily afford him complete relief. As such, dismissal of plaintiff's fiduciary duty claim at this time would be premature. *See DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 719 (7th Cir. 1998) (noting, under former Fed. R. Civ. P. 8(e)(2), that "[i]nconsistent pleadings are allowable, and the use of discovery to winnow or refine theories of liability should not be discouraged") (internal citation omitted).

### B. Equitable Estoppel Claim

Plaintiff posits that he has also successfully pled an equitable estoppel claim.[4] Though a fiduciary duty claim and an equitable estoppel claim may both rely on material misrepresentations made by a plan fiduciary, they are distinct claims that require separate analysis. In *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010), the Sixth Circuit recognized the availability of equitable estoppel claims in the context of ERISA pension plans, holding that:

> a plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3)

---

[3] The Court makes no determination, at this time, as to whether (and how much) discovery will be permitted in this litigation. Issues involving discovery will be discussed at the Case Management Conference.

[4] It is true that count two is labeled "Breach of Fiduciary Duty[.]" (Compl. at 8.) However, the failure to correctly label or categorize the legal theory giving rise to the cause of action is not fatal to the claim. *See Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003) (analyzing complaint under the IDEA and the Rehabilitation Act even though it specifically referred only to 42 U.S.C. § 1983) (citations omitted). Instead, the complaint allegations must be reviewed to determine whether they support a claim.

11

>  extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

Under the common law, the elements of an estoppel claim are: (1) conduct or language amounting to a material representation; (2) awareness of the true facts by the party to be estopped; (3) an intention that the representation be acted upon; (4) unawareness of the true facts by the individual to whom the representations are made; and (5) detrimental and justifiable reliance by the party asserting estoppel. *Id*. at 442 (citations omitted).

Plaintiff has alleged sufficient facts to set forth a claim for equitable estoppel. He has alleged that defendants themselves, or through a predecessor in interest, made material representations to plaintiff regarding the operation of an ERISA pension plan and the impact that certain employment agreements would have on the Plan. (Compl. ¶¶ 8, 10, 16-30, and 38-49.) He has further alleged that these representations were false (*Id*. ¶ 43), that defendants intended for plaintiff to rely on these representations (*Id*. ¶ 47), knowing that they were false (*Id*. ¶ 46), and that plaintiff did reasonably and justifiably rely on those representations to his detriment. (*Id*. ¶ 8 [relocated family and abandoned a consulting business], ¶ 13 [accepted employment subject to the understanding that he would obtain 10 years of service in 5 years of employment], ¶ 42.) The additional requirement that the misrepresentation be in writing is also satisfied, as it is alleged that both the employment agreement and written correspondence contained these material representations. (*Id*. ¶¶ 15-18, 23.)

With respect to the final requirements—that there are extraordinary circumstances and that plaintiff justifiably relied on the unambiguous terms of the Plan— plaintiff has alleged that defendants, or their predecessors in interest, repeatedly

12

represented that plaintiff would have sufficient service years to qualify for a full pension, only to discover later that his service time was a month shy of the necessary 10 years. Plaintiff has also alleged that he repeatedly and diligently attempted to ascertain the correct amount of his monthly benefit but was thwarted by defendants' representatives. These facts set forth a plausible showing of extraordinary circumstances. *See, e.g., Pell v. E.I. DuPont de Nemours & Co., Inc.*, 539 F.3d 292, 304-05 (3d Cir. 2008) ("DuPont's repeated affirmative misrepresentations [regarding the plan participant's beginning service date], combined with Pell's diligence, demonstrate that there are extraordinary circumstances."); *Stark*, 790 F. Supp. 2d at 671 (similar). Accordingly, the Court finds that plaintiff has pled sufficient facts to set forth a claim of equitable estoppel.

### C. Refusal to Provide Information and Documents Claim

In his third cause of action, plaintiff alleges that defendants failed to provide copies of prior decisions involving challenges by other plan participants of service credit calculations under the Plan. Plaintiff's refusal to provide documents claim is brought pursuant to 29 U.S.C. § 1132(c)(1)(B), which authorizes pension plan participants to sue ERISA plan administrators for a penalty if they fail to:

> [C]omply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request . . . .

Section 1132(c)(1)(B) must be read in connection with 29 U.S.C. § 1024(b), which identifies the types of documents that must be produced by the plan administrator upon request. Specifically, that section provides:

13

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, [sic] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. . . .

§ 1024(b)(4). Because prior decisions involving the calculation of service credit are not among the documents specifically mentioned in § 1024(b)(4), plaintiff can only prevail on claim three if the documents he requested constitute "other instruments upon which the plan is established or operated."

The Sixth Circuit has held that the term "other instruments" in § 1024(b)(4) "is . . . properly limited to those class of documents which provide a plan participant with information concerning how the plan is *operated*." *Allinder v. Inter-City Prods. Corp. (USA)*, 152 F.3d 544, 549 (6th Cir. 1998) (emphasis in original). Notwithstanding this attempt to define the scope of this term, the Sixth Circuit has also emphasized that the "purpose of ERISA's disclosure requirements is to ensure that 'the individual participant knows exactly where he stands with respect to the plan.'" *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1070 (6th Cir. 1994) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)). For this reason, the court in *Bartling* noted that, "all other things being equal, courts should favor disclosure where it would help participants understand their rights." *Id*.

The documents at issue in *Bartling* were actuarial valuation reports. Because such reports are required for every third plan year, pursuant to 29 U.S.C. § 1023(d), the court determined that they were "indispensable to the operation of the plan. As such, they [were] 'instruments under which the plan . . . operated,' which must be disclosed upon request upon the plain language of § 1024(b)(4)." *Bartling*, 29 F.3d at

14

1070 (quoting 29 U.S.C. § 1024(b)(4)); *but see Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 734-35 (6th Cir. 2008) (finding that the ruling in *Bartling* was not so broad as to reach a request for copies of plaintiff's enrollment forms).

While *Bartling* urges a rather expansive reading of the "other instruments" category of documents, it remains true that a plan administrator is under no obligation to provide documents not contemplated by the statute, no matter how helpful they might be to the individual plan participant. *See Hamilton v. Hartford Life and Acc. Ins. Co.*, No. CV-06-417-TUC-DCB, 2009 WL 5872975, at *5 (D. Ariz. Apr. 14, 2009) ("There exists a plethora of cases which establish the rule that ERISA sets a ceiling as to the disclosure of information—overbroad requests for information need not be complied with.") (collecting cases), *aff'd*, 378 F. App'x 717 (9th Cir. 2010); *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 758-59 (7th Cir. 1999) ("If it had meant to require production of all documents relevant to a plan, Congress could have said so."); *see generally Dobson v. Hartford*, 389 F.3d 386, 401 (2d Cir. 2004) (noting in breach of fiduciary duty claim that "[t]he authorities do not suggest that the disclosure obligation applies to every piece of information a beneficiary might find useful in seeking a recovery from the plan").

The parties have pointed to no case authority interpreting requests for copies of prior decisions involving service time calculations, and the Court's research has not uncovered any. Nonetheless, plaintiff suggests that a fiduciary must take such prior rulings into consideration if it is to fulfill its fiduciary role, and cites to 29 U.S.C. § 1104(a) for support. Section 1104(a), however, merely sets forth the fiduciary's general responsibility to execute his duties "with the care, skill, prudence, and diligence" of a "prudent man," and says nothing about the reference to prior decisions. § 1104(a)(1)(B).

More to the point, plaintiff has failed to offer any support for his position that prior rulings involving other plan participants would provide a plan participant with information concerning how the plan is operated.

Thus, the Court turns to decisions addressing requests for information regarding other plan participants. In *Hughes Salaried Retirees Action Comm. v. Adm'r of the Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686 (9th Cir. 1995), the court ruled that a plan administrator was not required, under 29 U.S.C. § 1024(b)(4), to honor a plan participant's request for the names and addresses of other retired plan participants, finding that to rule otherwise would "strain the meaning" of this section. *Id*. at 689 (quotation marks omitted). The court reasoned that, "[u]nlike the documents specifically listed in [29 U.S.C. § 1024(b)(4)]—plan descriptions, annual and terminal reports, and bargaining and trust agreements—participants' names and address provide no information about the plan or benefits." *Id*. at 690.

Similarly, in *Sahlie v. Nolen*, 984 F. Supp. 1389, 1403 (M.D. Ala. 1997), the court rejected the plaintiffs' denial of documents claim, which was premised upon a failure to provide a list of the account balances of all participants in the plan. The court found that such information was not necessary to ensure an understanding of how the plan operated, nor would it clarify the benefits that were available to the plan participant—Sahlie. In reaching this conclusion, the court underscored the fact that it was "the calculation of Mr. Sahlie's account, not those of the other Plan participants, that is at issue here." *Id*. *See also Dobson*, 389 F.3d at 402 (in connection with a breach of fiduciary duty claim, plan participants were not entitled to examples of other plan participants who had been paid delayed interest on their claims). The court also

specifically observed that such a result would be appropriate even under the more "expansive" reading of the term suggested by the Sixth Circuit in *Bartling*, noting that "the information requested by the plaintiffs would not fall within the purview of 'instruments under which the plan . . . operated.'" *Id*. (quoting 29 U.S.C. § 1024(b)(4)).

These cases stand in sharp contrast to those cases where the requested documents related to the determination of *the plaintiff's benefits*. For example, in *Mondry v. Am. Fam. Mut. Ins. Co*., 557 F.3d 781, 800 (7th Cir. 2009), the court ruled that a plan participant was entitled to receive the plan administrator's internal guidelines because it expressly relied on them in denying the participant's claim for benefits. *See, e.g., Arp v. Whirlpool Corp*., No. 3:12 CV 770, 2012 WL 2826972, at *3 (N.D. Ohio July 10, 2012) (a request for information relating to the calculation of the plaintiffs' service credit was covered by 29 U.S.C. § 1024(b)(4) because such information would help the plaintiffs "understand *their rights* to benefits under the terms of the Plan.") (emphasis added); *Teen Help, Inc. v. Operating Eng'rs Health and Welfare Trust Fund*, No. C 98-2084 VRW, 1999 WL 1069756, at *3 (N.D. Cal. Aug. 24, 1999) (internal review criteria used to calculate plaintiff's benefits was subject to disclosure, upon request); *see also Cataldo v. U.S. Steel Corp*., 676 F.3d 542, 556 (6th Cir. 2012) (disclosure limited to copies of *plaintiffs'* most recent benefit calculations satisfied plaintiffs' general request for "calculations").

Even affording an expansive interpretation to the catchall provision in 29 U.S.C. § 1024(b)(4), the Court concludes that the requested documents would not provide plaintiff with information concerning how the Plan is operated. Nor could rulings on the service calculations of other plan participants show plaintiff exactly where *he* stood with

respect to the Plan. This is especially true in plaintiff's case because his service year calculation under the Plan was allegedly modified by the side employment agreements he entered into with DLC and FENOC—agreements that did not apply to other plan participants. The treatment of service credit for other participants, under dissimilar circumstances, would not clarify the benefits available to plaintiff or help him understand his rights. Because the Court finds, as a matter of law, that plaintiff's request fell outside the purview of 29 U.S.C. § 1024(b)(4), defendants were not obligated to provide plaintiff with the documents he requested, and their motion to dismiss claim three is granted.

## IV. CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss is granted, in part, and denied, in part. Plaintiff's claim for refusal to furnish documents is dismissed with prejudice.

**IT IS SO ORDERED**.

Dated: December 31, 2014

                                                **HONORABLE SARA LIOI**
                                                **UNITED STATES DISTRICT JUDGE**